Thank you. We're ready now to take number 21-3189 and 21-3184, United States v. Cortez and United States v. Cervantes Aguilar. Okay, yes, I see you both there. I thought I was missing an attorney. So, Ms. Carruthers and Ms. Nichols, you wanted to split your time, 10 minutes each. I assume you're doing it by topic, is that correct? That'll help what topic you're going to address. We'll do that for 10 minutes and then switch to the other attorney. And do I start with Ms. Carruthers, is that correct? Yes. You may proceed. Good morning, may it please the court. Candice Carruthers, Assistant Federal Defender for Mr. Cervantes. Today, I will be addressing points one and two of my brief regarding the improper jury instruction. Counsel for Cortez-Nieto will address the acquittal issue. The partiality of a witness is always relevant as discrediting the witness and affecting the weight of his testimony. The exposure of a witness's motivation for testifying is a proper and important function of the constitutionally protected right of cross-examination. The central defense theory in this case was that the Suarez siblings, their motivation for testifying falsely was to place blame on the defendants in an effort to cover up their own guilt. Because the district court told the jury that the possible guilts of others should not enter your thinking, it undercut a legitimate defense theory necessitating reversal. Reversal is also necessary because the prosecutor compounded this harm by directly linking the testimony of the Suarez's with instruction 24 and emphasizing that it foreclosed a legitimate defense theory. What was our case? Go ahead. No, please, Judge Hart. And that theory is? That the Suarez siblings were lying to cover up their own guilt. And so it was a good... But then you're ignoring several instructions. Instructions four, six, and seven tell the jury to be very, to always consider why someone would have a motive to lie. One of the instruction four is that the witness have any relationship with either the government or the defense. There's an instruction number six on accomplished testimony, accomplished testimony. Same with... You think the jurors ignored those instructions, which clearly supported your theory? Those instructions allowed them to consider whether the Suarez's had a personal vendetta or whether there was some relationship between them and the government. But the court's instruction explicitly removed this theory from their thinking and that the possible guilt of others. And since that was removed, it could not have been a part of that calculation. And no other instruction identified the possible guilt of a witness as their motivation for testifying falsely. And there's no reason to think that the jury would have said, well, we're considering the guilt of this defendant. We can't think about the guilt of the Suarez's. Oh, but we actually can in this case. There's no reason to think the language of the instruction was absolute. It absolutely barred the guilt of the Suarez's from being in the consideration and the evaluation of Mr. Cervantes' guilt. And so that instruction... Maybe standing alone, but as Judge Hart points out, it was not absolute, one could argue as qualified by the other instructions. But even going beyond that, we're not riding on a blank slate here. I mean, we have cases overly in ARAS, in ARAS in particular, which it seems to me that we have approved exactly this instruction. And ARAS, it seems to me is quite on point to the situation we're dealing with here. And so why doesn't ARAS tell us that this argument is a non-starter? Overly in ARAS actually involved a different instruction. Oh, yes, it does. But I mean, difference what? You should not concern yourself. I mean, tell me how that is a distinction with a difference. That is a distinction with a difference because it is less absolute and so less problematic. It actually tracks more closely to the second paragraph of the possible guilt instruction. And it just tells the jury, you don't have to decide or consider why the prosecutor chose to charge who it chose to charge. But saying that something cannot enter your thinking is much more encompassing. And then something that is different in this case that is not present in any of the other cases is that there is no indication that a prosecutor then went and compounded the harm by telling the jury, you know exactly what to do with that instruction. You know exactly what to do with that defense. And when you look at the context of what the the prosecutor begins, it's in rebuttal closing. The last thing any attorney says to the jury, it says, mentions Victor for the very first time in its entire closing statement, sell you for the second and says, you know what to do with that. You know that that can't enter your thinking. OK, well, if if the instruction read in context was not error, is there any basis for finding that the prosecutor's repetition parroting of that instruction was error? Yes, your honor. And that's because the analysis of prosecutorial misconduct does not require a subjective bad intent from the prosecutor. It just requires a misstatement of the law. And because I'm sorry, I must not have been clear. What I'm saying is if the predicate is if for whatever reason you lose on the first issue. So this was not error. This is incorrect statement of the law. Then is there any basis for finding that the prosecutor committed prosecutorial misconduct in repeating that correct statement of the law? Yes, your honor, because it was intentionally misleading and confusing for the jury to link the Suarez's testimony with an instruction in that manner. She said, you know exactly what to do and sought to foreclose a legitimate defense theory that our Supreme Court has said a jury is entitled to consider why a witness might be lying. OK, so you're saying that that even if that instruction in the on the first issue would have been lawful, but the sequence of events in the connection with the closing argument caused the jury to be misled as to to cutting off your defense. In other words, the way that played out would have meant that there would have been prosecutorial misconduct at that point. Absolutely, absolutely. It seems to me, though, that the prosecutor did it just right. He said, yes, there are these other people who testified against the defendant who were involved in the drugs, but their guilt is relevant, meaning you shouldn't. I would take that to mean what is a proper statement of the law. But the fact that there are other people who are guilty as well is is no excuse for not convicting the defendant before you. You shouldn't consider their guilt as a reason not to. And then after saying these things, the prosecutor showing that they can be impeached. The instruction regarding the informants and the couple and the accomplices, if you believe them, if they're corroborated and if you believe them beyond a reasonable doubt, absolutely right to give their testimony that that seems to me to be recognizing that, OK, I say you can't consider their guilt. That's not a reason to refuse the defendant. But I also recognize their accomplices. And you heard instructions about how you have to be skeptical about accomplice testimony, but you can still believe them. It seems to me that the prosecutor, as opposed to exaggerating a problem, maybe eliminating it. I see my time is concluding, so I'd like to answer your question and then reserve my remaining time for rebuttal. The issue is that was not the defense's theory. She says, you know what to do with that argument. And the defense's argument was that the Suarez were lying to cover up their guilt. So her later example about running the stoplight and speeding, it is actually just interpreting the central defense theory. And it cannot be understated that these two witnesses were the evidence, the government's sole evidence of any intention to commit these offenses. And so that's why her comments were so important. And with that, I will reserve my remaining time unless there are further questions. I'll reserve my remaining time for rebuttal and request this court to reverse Mr. Cervantes's convictions. Thank you, Ms. Nichols. Good morning. May it please the court, I'm Paige Nichols here on behalf of Mr. Cortez Nieto. And I'd like to jump right into issue number three, which is a radical turn from where we've been. The United States government is the richest, most powerful, and best represented litigant to appear before the federal courts. And as that litigant in our adversary system, the government chooses what convictions to seek. And it should be put to that choice under the usual rules of party presentation. The district court departed too far from those rules when it sua sponte handed the government convictions on lesser crimes that the government never sought, in fact, even actively abandoned. If the jury had returned proper verdicts under the instructions and the asked for, those proper verdicts would have been general acquittals. The district court should have entered acquittals, and this court should order it to do that now. It's very interesting about lesser-included offenses here, since the government sought and got lesser-included offenses regarding the quantity of drugs. Is there any discussion anywhere about lesser-included offenses with respect to the school zone element? Not during the instructions portion of the case, but as your honor noted, the government clearly understood how lessers work and asked for those on the quantity element on the same grounds that it would have and could have asked for it on the lesser element, but didn't do so. However, when we get to post-verdict, and we are at the point of arguing our post-verdict motion for judgment of acquittal, at that point we actually are zeroed in on that 1,000 feet element. And even then, the government doesn't say in the alternative, give us convictions on the lessers. The government stands its ground and says, I want it all, and that's the only option that the district court was asked to consider. Are the defendants guilty or not guilty of the offenses as charged, as submitted to the jury? And why do you think the government didn't seek a lesser-included in that regard? Well, there's certainly no evidence on the record that this was a mistake, and the government hasn't argued on appeal that this was a mistake. In fact, this is a prosecutor who told the jurors, I've had 32 years of experience prosecuting crimes in this court. So what's the strategy? Well, all I can do is just imagine what the strategy is. Beck v. Alabama tells us that we know that when the jury is presented with charges, and it thinks that the defendants are guilty of something, but the evidence is maybe weak on one element, they are more likely to convict than to acquit. And so the government that really wants that conviction, that involves the thousand feet of a park where their press release can say, we not only stopped a meth lab, but we saved the little children as well. And I'm spinning out with my speculation here because that's all I've got. We don't know what the government's strategy was, but this court has never said that defense lawyers' strategies has to be on the table before finding that we have waived a jury verdict as to lessers when we submit verdict forms that exclude those lessers. In that regard, about what we've said or not said, and I know you distinguish Smith in your briefing, but I want you to explain that a little bit to me because it seems to me that one of the difficulties of your argument is that Judge Kelly and the panel and Smith did precisely what you're saying the government, what Judge Murciaga erroneously did in this case. Now you make the point that 2106 would support what we do as opposed to what a district court does. But the shortcoming in my view about that is, well, okay, let's say that's true, that Judge Murciaga didn't use 2106, but if he had just affirmed, but just said he's going to enter a dismissal on even the lesser included offense, and it was appealed, the government appealed, well, under Smith, we could do precisely what Judge Murciaga did. We could say, now we're going to affirm the Rule 29 motion with regard to the, I think it's the 860 enhancement, but we're on the lesser included offense, then we will impose a conviction on the lesser included offense. How do you distinct, what is, how do you navigate Smith? Three ways, pardon me. First, in Smith, I don't think anybody argued that the government had waived those lessers. Second, the government had argued in Smith, we, if we lose on the sufficiency claim with respect to 1,000 feet, we still think that the underlying convictions should stand. So the government at least went that far on a different theory, slightly different theory, but at least the government had argued those lesser convictions should stand. So the government was going after those lessers like it didn't ever hear. And I forgot my third point, but it will come to me, I'm sure. Does that answer the question? A lot hinges in your argument on what the government did. I mean, don't we have case law that indicates that when you charge somebody with an offense, that it necessarily includes the lesser included offenses? Well, it does to a point. Well, if it does, and it seems to be the subtext of your argument, somehow or other, somewhere along the line, the government has to wave its hands and say, I'm, I'm reserving, I'm keeping these lesser included. Well, what, what sort, what precedent do you have to indicate the government has to do that? If the jury had returned verdicts on the crimes that the government submitted to it through its proffered instructions and forms, the jury would have returned a general verdict of acquittals. The government at that point could not stand up and say, but wait, we should get convictions on the lessers. They could not do that at that point. So that is, that's really the, the basis of our argument here is I understand that maybe the judge could have, maybe the judge could have sua sponte, had nobody asked for but once the, well, the judge could have sua sponte instructed. I mean, I think our case law suggests that that's possible. Therefore, I mean, yes, I took point taken on the acquittal, but that implicates double jeopardy, right? So it's, I mean, I'm not sure how far that analogy goes. I mean, yes, you're right. The government couldn't have come back and say, oh, now convicted by the lesser included. But if you have a jury that has convicted this individual of an offense, which necessarily includes another offense, that means they've necessarily convicted them of the lesser offense, right? Yes. And we're not arguing that it's not a lesser offense. We're not arguing double jeopardy or notice. Our argument is really about the principle of party presentation. And in that sense, we've got a problem because the government never presented either the jury or the district court with the lesser crimes. And so even if all the government did was waive, I mean, excuse me, even if all the government did was forfeit convictions on those crimes, the rule of party presentation still holds here like it did in Zanetting-Smith and Greenlaw and this court's case in Mitchell. All of those cases involved a party standing silent on something and a government injecting an issue into the, not the government, the court injecting an issue into the one of those cases, it was inappropriate for the court to reach a result that no party had ever asked for. On the party presentation question, what about the notion that, that when, yes, there was the motion for judgment of acquittal argument, and in that argument, yes, everyone was focused on these convictions. The government was arguing that they should be maintained. The defendant was arguing to the contrary. There was an opportunity there to arguments relative to that conviction. I mean, I think you view that as a point of waiver, but the point I'm making is why necessarily in that context would the district court not be able to view that, well, you've had your opportunity to make an argument, I can do this, and therefore I'm going to do it. I mean, why would that violate the principle of party presentation necessarily? In other words, there has been an opportunity to make the argument relative to this conviction, which, mind you, necessarily includes the lesser conviction. So why would that necessarily violate principle of party presentation? I'd like to answer this question and then reserve what little time I have left, but in the same way that in Sinanning-Smith, the Supreme Court said the Ninth Circuit violated the rule of party presentation, even though they gave opportunity to both brief and orally argue the issue. It sounds like the question seems to go to notice, but notice isn't part of the party presentation analysis. And if I could, I'd like to reserve the rest of my time. Thank you, counsel. Mr. Brown? Good morning again, Your Honors. James Brown for the United States. I would like to start on the lesser included offense issue, if I may. Do you have any knowledge? Is there anything in the record to show whether there was a suggestion of a lesser included offense that was rejected by counsel or did the judge ever bring it up? Is there anything in the record about that? I have no knowledge about anything in the record about that, Your Honor. Well, I'm very concerned about what happened and I'm looking at the appellate rule. Well, it's the statute, sorry. 28 U.S.C. 2106. That allows an appellate court or the Supreme Court to affirm, modify, vacate, set aside, or reverse any judgment. Modify is the operative term here. Or order of a court lawfully brought before it for review and may remand the cause and direct the entry of such appropriate judgment, decree, or order, or require such further proceedings to be as may be just under the circumstances. And I have questions about whether it is just to enter a conviction on a lesser included offense when the jury wasn't instructed. There aren't very many cases on this, but almost all of them involved where their jury had been instructed on a lesser included offense. When the appellate court set aside the judgment and ordered entry of a judgment on the lesser included. And the reason that's important to me is because of the bit of the policy that Ms. Nichols talked about. The government may not want to have a lesser included offense because they want to put the defendant or the jury in the awkward position of saying, gee, this person did something wrong. I don't want to let them go. So I'll convict on the greater offense because that's the only choice we have. What setting aside or allowing entry on the lesser included offense does is it makes this a cost-free strategy for the government. We push the jury toward convicting on dealing drugs in a school zone. And they convicted maybe because maybe they weren't so sure about the school zone, but they thought, gosh, he's going to go free otherwise. Then the judge looks and says, you know, there really wasn't enough evidence to support the school proximity issue element. And then the judge rescues the prosecutor from this strategy by saying, we'll enter judgment on the lesser included offense. And to be sure, the lesser included offense is always considered proper under the indictment. But that's when the jury is instructed that it can enter, that it can convict on the lesser. So make me feel more comfortable about what happened here. Well, you know, the court has like characterized and painted a picture of atmospherics and it understands that. But we'd ask the court to look at it in a different way. It's just doing what the law allows. You know, the law says rule 31 says defendant can be found guilty of an offense necessarily included the charge defense. Your honor has said, well, they weren't instructed on the lesser included offense. We would beg to disagree. They were given all the elements of the lesser included offense on the verdict form. And they found all the elements of the lesser offense. They were instructed on it and they found it. It just wasn't presented that way as a lesser included offense to the jury, but they were, they were instructed on it and they found it. That's why it's just, that's why the court should feel better about it because it's not an end run around anything. It's just, they were instructed on the elements, the lesser included, they found them here. The district court said, wait a minute, there's one element. I don't agree that that was there. So, but they did find everything else. So that's why the court should feel fine about it. And then the court should also feel fine about it because in the wood case, this court said the district courts should, should look at lesser included offenses and see if they apply. This court has direct district courts to find lesser included offenses and said it can enter judgment on them. If they're, if, if they're supported by the verdict here, it obviously was. In wood there wasn't, there wasn't a party presentation argument, right? There wasn't there, there wasn't. And that's, that's an interesting point. There wasn't a party presentation argument. You know, if they, if they wanted to, if the defense wanted to say, we want to know if this is all or nothing and, and, and presented as an all or nothing proposition, I don't know what we would have said. We would have said, we don't need all or nothing because they're already being, being instructed on the lesser included offense. We have the verdict form. We have the elements. We know exactly what they found and what they were instructed on. That's why the court should not feel that this is somehow untoward. I'm sorry. What, what's wrong with the defendant saying, I don't think you could prove this as charged. And I think we'll get a defense, a defense verdict. Why, why, why is there any burden on the defendant to insist on an instruction on the lesser included? I mean, there's no question. I mean, the issue here is one of policy. Really? There's no question. The jury found the defendant guilty of every element for the lesser included offense. That's, and that makes it very attractive to just enter the judgment for the lesser included offense. But if we allow, but if we allow that, that encourages what I think is a questionable strategy by the government, if it's weak on an element that doesn't need to be proved for the lesser included offense. That's why the language in section 2106 further proceedings to be had as maybe just under the circumstances. And I've got to, I don't think we should encourage the government to overcharge and pressure the jury to find on the, what it can lead to the policy is it might lead to convictions that juries probably wouldn't have entered verdicts on if they had a lesser included offense because instruction, because they might have had questions about maybe, maybe here there was enough evidence of the thousand foot element being established, but it wasn't very good. And the jury might not be totally convinced about that convinced beyond a reasonable doubt, but if they're presented with all or nothing, they might convict on that. So that's not a good result. And we shouldn't encourage prosecutors to seek that kind of result. It seems to me, go ahead. I'm interested in your response. We're not being encouraged to seek any result that is not justified by the law itself. In order to get the results that we, the charge, we have to submit the charge to the jury. We have to prove it beyond a reasonable doubt. We have to get the elements in front of the jury. They have to find each element beyond a reasonable doubt. That's a really heavy burden. It's hard to say that we're pressuring somebody when we have to prove all that stuff before they can even convict on something. So I think the Supreme court recognized the problem in Beck. Now, this is not a capital case, but the principle that motivated the Supreme court in that circumstance was to say, you always have to instruct on lesser included offenses and capital cases just to avoid this sort of problem. It's not that this sort of problem is considered totally speculative by the courts. We just don't have a rule requiring lesser included offenses to be the jury to be instructed on lesser included offenses and non-capital cases. If you're not going to instruct on lesser included offenses, and you prove all the elements of the greater offense, then you shouldn't get a verdict, the judgment changed to the lesser included, seems to me. Well, then this court can overturn Wood because Wood says that a district court should consider not only whether the evidence would be sufficient to sustain a conviction on the offense charge, but also whether it would be sufficient to sustain a conviction on a lesser included offense when ruling on a rule 29 motion. Then this court needs to change the law, change the law in higher hands. What's stated in Wood is perfectly appropriate when there's been an instruction on the lesser included offense. Well, that's not what Wood said. That's not what Wood said. And I don't mean to talk over you, but just to elaborate on Judge Hart's question, was it in Wood, the whole problem was that the judge instructed on the greater offense and shouldn't have, and that the prejudice to the defendant from creating that factor by instructing on the greater offense, when that could have adversely affected the defendant on consideration of the lesser included offense, which is a completely, that's a 190 degree difference than what we have here. Is that right? Well, it may be a factual difference, but I don't think that that difference that court decided was dispositive or controlled the language in Wood that it's extremely clear and qualified and not ambiguous in police. So we would just rely on Wood. Wood says that what the government did here was fine, what the district did here was fine. So now if I could get to Judge Hart's concerns about it being a questionable strategy, overcharging, pressuring the jury, you know, we just sort of remind the court that the defendants have attorneys and they can ask for lesser included offenses. And if they ask for them, you know, most times they're going to get them unless it's an affirmative defense. And the judge may say of what Judge Hart's is talking about, in this case, let's say the defendant had said, I want a lesser included offense. The judge would have been well within his discretion to say, no, Beck versus Alabama doesn't require it. I'm not doing it. Well, that's, that's true. And so it's really a one way street and the government can do that. And, and it frankly lose and then have the referee come in after the game has been played and say, okay, well, the only conviction on the lesser included offense is tainted. There was only one offense that was charged. I'm throwing that out, even though there was no lesser included offense that was, that was given in the jury charge. I'm going to cure it, but it's really a one way street because only the government can win on that. Only because the defendant doesn't have a right under Beck for a lesser included offense charge. Well, Your Honor, we would gently disagree with the court's characterization that it's one way street. It's not, they can ask for a lesser included offense. They can get a lesser included offense. It's not required by law. There's some judicial discretion, but that's why we have judges to exercise their discretion appropriately. If they don't, then there's an appealable issue, but it's not a one way street. We have courts, we have, we have courts to mediate everything. We have lawyers to mediate everything. It's not one way. And then we have the law on our side as well. We have the wood case. We have rule 31. We have, we have a 2106, which all sort of stand for the proposition that this is proper. So if it feels improper to the court, the court should consider the law that it's written down. Consider the fact that the judge is the intermediary. The judge has to exercise his discretion appropriately. The defendants can ask for that during the instructions conference. They can ask for that on appeal. I mean, it's not a one way street. It's, it's an adversarial process. And if the government receives some advantage, that doesn't mean it's unfair. That just means that a lesser included offense is necessarily in charge and a greater offense. And that legal proposition carries with it some consequences. And one of those consequences is the court may enter judgment on a lesser included offense when a greater offense is not proven. It's not unfair. Let me challenge you on one point when you say, just because this gives the prosecution advantage, doesn't mean it's unfair. The advantage here, and it's not one that prosecutors, I won't get into that. The advantage here is that by not having a lesser included offense instruction, the prosecution may be imposing some pressures on the jury to find an element beyond the reasonable doubt when they really aren't convinced that much. But the jury recognizes that if they don't find that element, then the person goes totally free. And if the government wants to take its chances on that, then fine. But then they shouldn't be rescued by the judge, by the trial judge later. In the scenario, the court is painted. The court has painted a scenario where the jury has not followed the instruction to the court. And we presume that the jury is going to follow the instruction court because in your scenario, Judge Hart, I say this, I'm excited, but I mean, respectful nonetheless, in your scenario, your honor, the court has the court has, has instructed them. They must find every element beyond a reasonable doubt. They've been given an instruction. So you can't just say, oh, they're going to be pressured. So they're just going to disregard all the instructions and disregard the beyond a reasonable doubt instruction and go ahead and find this because they want to get away for the weekend. It's just too much speculation. This is why that's a valid point. Don't worry about insulting. You can disagree with me as that scenario only happens in jury disregards instructions. And this court presumes the jury follows the instruction. That's, that's the fail safe. It's the instruction. It's the intercession of the court. It's the court mediating this. That's why it's not unfair. There's too many fail safes there for this to be unfair. It's just, it's just not possible. And the courts, the court's point is well taken, but it's just, it's just, you've got to admit though, in this case, the judge said no reasonable jury could have found this element beyond the reasonable doubt. Right. And you know, something went wrong. Well, you know, right. If the system works, right. They were, they were, they were, but they were guilty of right. That the court, the court, they were convicted of elements that the jury found they were convicted of what they were guilty of. The intercession, the media, mediary of the judge fixed the problem. And that's all, that's, that's all we can ask for a justice system. They were convicted of what they were guilty of. So it worked. It worked. What advantage did we get? I think judge Holmes wants to ask the question. I, I want to shift gears just a little bit and ask, make sure I understand your position on this issue. Somewhat interestingly, there was a shift in position by the appellants in a reply brief on the harmless error standard after rethinking it, I think was the phrase that was used. They, they decided to take a different position on that. Is it your view that on the harmless error analysis, we're applying Chapman or what, what standard are we applying in determining whether there's harmless error on, on the question of, of the convictions here? Well, your honor, they, they bring that up under issue one, I think. And we propose that the standard is USP Hawley. We asked what verdict a properly instructed jury would have returned. They proposed Sullivan, Louisiana, asking whether the guilty verdict actually rendered was surely unattributable to the error. We say it really doesn't make much difference because under, under the standard that they propose in making that determination, the alleged error is considered in the context of the other evidence presented in the case in order to determine whether admission was harmless beyond a reasonable doubt. That's from Russian eight 48 F third, 1239 page 12. Yes. You're comfortable with the harmless beyond a reasonable doubt standard, right? You think that's right. We think they've alleged constitutional error, but, but the fact is under their standard or our standard, you can look at the strength of the evidence here. It was overwhelming. So we think any, any error would be harmless. All right. Now I've not talked about issue one and maybe I should just ask the court if they have questions about issue one, so I can go straight to the court's concerns on issues one and two. If not, I won't spend much time discussing it. I only have a minute 49 left. Well, I do have one question about harmlessness. Um, was there any evidence, um, that ever put, uh, Mr. Cervantes or Mr. Cortez Nieto in the house other than, I mean, I know you have the FedEx package, uh, from Mr. Cortez Nieto and you have the registration of the car for Mr. Cervantes that they, you have evidence that they were using the house as their address, but obviously that's visual and surveillance, for example, as someone seeing them go into the house and you have, uh, the, the camouflage shirt, a camouflage shirt that seemed to be similar to the one that Mr. Cortez Nieto was saying. But, uh, other than that, is there any evidence that anybody ever spotted or had a reason to believe that they were actually in the house? Well, we have, we have two inferences. Uh, the first inference is how did all the stuff that they bought at the stores that they're on video buying get in the house? Somebody had to put them in the house and it was most likely the people who bought them who put them in the house. That's one inference. The second inference is we have phone records showing that their phones, both their phones pinged on cell towers in and around the residence. We can't put them inside the residence with the cell phone pings, but it is certainly strong circumstantial evidence that they were in or about that location over an extended period of time. And we talked about that cell, cell phone evidence in our brief. All right. Second question, if, if you don't mind, um, you know, you have the evidence that, uh, you know, they bought acetone, they bought cooler, they bought all the stuff that you use to make methamphetamine. And those of us that listen to these methamphetamine cases all of the time, um, you know, we all feel like we're becoming lay experts on how to make methamphetamine, but most of the world doesn't know it. Was there any evidence in the record that it is just so widely known within the population that you use acetone to make methamphetamine, you use all these other things that they used to buy, uh, that they bought, uh, at these, um, home improvement stores that it was just so widely known that clearly, uh, the analogy that defense council made that these were like Instacart shoppers, that they would have known that these things were going to be used for methamphetamine. If you assume that they were methamphetamine dealers, of course they did. If you were, if you assume that they were people like most of us, we would have no idea that acetone or these things are used to make methamphetamine. Uh, your honor, we, the court asks, is there anything in the record about it being widely known among the general population of the answers? There's no evidence, evidence in the record to that effect. Thank you. Any other questions from the panel? Definitely. Thank you. Now, I, I think Ms. Carruthers and Ms. Nichols each have a minute or so left if you want to use that time. Why don't you start first, Ms. Carruthers? I'll just make some brief points. The items could have definitely been brought into the home by they lived nearby. And so that is why possibly why their cell phones were picked up. And so that evidence is far from overwhelming. And as far as the purchases of the items, it is, I think your honor is absolutely right that most people would not know what this product could be used for. And and he would not have any reason to think that they were not just quantities supply like it was during COVID. You couldn't buy more than two rolls of toilet paper. No reason to think it was anything different than that. And thank you. Thank you, Ms. Nichols. Yes, your honor. I want to point out that, um, the wood case is absolutely distinguishable in the way that Judge Bacharach noted. Also it's about a pre verdict motion for judgment of and all of the cases having to do with I hate to interrupt, but but in wood, we we quote, and we cite a right right and Miller quote, which directly involved what doing exactly what the district court did here in the parenthetical, it says, quote, on a motion for judgment of acquittal, the court must consider whether the evidence would be sufficient to sustain a conviction of a lesser offense that's specifically quoted and cited in wood. So why shouldn't we read from that, that would contemplated exactly the situation that you have here. Because what is talking about a pre verdict motion, what is also a defendant friendly case would also doesn't involve the rule of party presentation being argued, there's no argument that the government waived those lessers there. The case is about what the judge may at that point submit to the jury, the judges instructions to the jury and and the judge is supposed to make this decision so that it doesn't over instruct the jury, but the opposite problem here. And lost my train there. But But one thing I want to point out is that what the judge may or may not do with respect to jury instructions before a case goes to the verdict is very different from the judge entering a dispositive action after we've gotten past this point where the got a windfall here with the verdict that it got on the instructions that submitted. That is not just, they should have been acquitted. Thank you. Further questions. Thank you everyone case submitted counselor excused.